IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JANE DOE,[1]

    Plaintiff(s),

v.

JOSEPH G. TYSK,

    Defendant.

---

COMPLAINT AND JURY TRIAL DEMAND

---

Plaintiff Jane Doe, by and through her attorney Allison Mahoney of ALM Law, LLC, alleges as follows:

## INTRODUCTION

1. Plaintiff and Defendant got married in December 2013 and separated nearly ten years later in April 2023.

2. On March 3, 2024, a year after the parties had separated, Plaintiff discovered that Defendant had shared at least one private, intimate image of her on the website Passion.com

---

[1] Plaintiff is permitted by law to proceed anonymously in this action. First, she brings the action pursuant to 15 U.S.C. § 6851 for Defendant's unlawful disclosure of her intimate image. Section 6851 explicitly allows a plaintiff to proceed anonymously. *See* 15 U.S.C. § 6851(b)(3)(B) (stating,"[i]n ordering relief under subparagraph (A), the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym."). Second, Plaintiff also filed a Colorado state law claim for the unauthorized disclosure of her intimate image, which has a similar provision. *See* C.R.S. § 13-21-1405(1)(a) (permitting a plaintiff to proceed using a pseudonym). Third, this is a matter of a highly sensitive and personal nature and one in which the injury litigated against would be incurred as a result of the disclosure of Plaintiff's identity. Plaintiff will file a motion with the Court seeking leave to appear anonymously in the near future.

without her consent. The image depicted Plaintiff and Defendant having sex and showed Defendant's penis in Plaintiff's vagina. As of that date, the image had attracted over 500 views and one like.

3. Defendant's action—referred to as "image-based sexual abuse"—is a form of domestic violence. Throughout the parties' marriage, Defendant regularly and relentlessly subjected Plaintiff to other forms of domestic violence as well, including, but not limited to, verbal, emotional, psychological, and physical abuse.

4. For instance, Defendant would berate, disparage, and gaslight Plaintiff, calling her a "bitch," "pathetic," "overly dramatic," a "hypochondriac," "weak," and "crazy," among other derogatory names.

5. Moreover, in September 2014, when Plaintiff was pregnant, Defendant shoved her so hard onto a hotel room floor that she slid across the room. He physically abused Plaintiff again in April 2021 as punishment for getting home late one night.

6. Defendant would coerce Plaintiff to engage in sexual acts as well, often videotaping and photographing Plaintiff without her permission during the encounters. These incidents left Plaintiff feeling degraded and humiliated, and they have armed Defendant with an arsenal of intimate images of Plaintiff that he can use to abuse her.

7. The image-based sexual abuse is the most severe type of abuse to which Defendant subjected Plaintiff, because of its ongoing, persistent, and cumulative nature. Indeed, Plaintiff is forever at risk of being revictimized if the image is shared—either by Defendant or third parties who viewed the image on the internet.

8. Plaintiff also lives in fear over what Defendant has done or will do with the other private, intimate still and video images of her that he possesses.

9. Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for the unlawful disclosure of her intimate image under federal and state laws and the torts of extreme and outrageous conduct, assault, and battery.

## PARTIES

10. At all relevant times, Plaintiff Jane Doe has been a resident of El Paso County, Colorado.

11. At all relevant times, Defendant Joseph G. Tysk has been a resident of El Paso County, Colorado.

## JURISDICTION AND VENUE

12. This action is brought pursuant to 28 U.S.C. §1331, federal question, pursuant to 15 U.S.C. § 6851.

13. Plaintiffs also assert state-law claims over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

14. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 as Defendant resides in this district and venue is appropriate in any district in which a defendant resides.

## FACTUAL ALLEGATIONS

15. Plaintiff met Defendant on match.com, an online dating platform, in December 2011, and they got married in December 2013. They have three young children together—twin daughters and a son.

16. Defendant has held three Department of Defense jobs throughout the parties' marriage. He is currently a civilian employee at NORTHCOM/NORAD with the Department of Defense, and he holds a secondary position as a Captain-Select Officer in the United States Navy Reserves.

17. Defendant is 6'2" and weighs approximately 200 pounds. Plaintiff, meanwhile, is only 5'6" and 118 pounds.

18. A few months into their marriage, Plaintiff and Defendant moved from the District of Columbia to southern Italy for Defendant's work. Plaintiff had to leave her career and move thousands of miles away from her family and friends. This marked the early stages of Plaintiff's loss of independence and connection to her support network.

19. While in Italy, Plaintiff became pregnant with the twins. Plaintiff has severe endometriosis, a rare total-body form of hyperhidrosis, and autonomic thermoregulatory disorder. The conditions caused complications with her pregnancy, and hyperhidrosis causes excessive sweating. Therefore, during her pregnancy, Plaintiff was often swollen and dehydrated.

20. During the sixteenth week of her pregnancy, in approximately the first week of September 2014, Plaintiff and Defendant were at a hotel in Lisbon, Portugal, where the temperature was well over 80 degrees Fahrenheit. Plaintiff only had heavy fall/winter maternity clothes, and she was swollen and overheating to the point that her feet barely fit into her shoes. When she told Defendant she could not do much walking and needed to be in air conditioning, he became enraged and began screaming at Plaintiff and calling her derogatory names, including a "bitch," a "controlling bitch," "pathetic," "overly dramatic," a "hypochondriac," "weak," a "whiner," and "crazy." Plaintiff began sobbing, and Defendant shoved her, causing her to fall on

4

the floor and slide across the hotel room. Plaintiff rolled to her side to protect her pregnant belly and awkwardly picked herself up. Defendant yelled after her, in sum and substance, "Where are you going? Where are you going to go? You don't have anywhere to go!" Plaintiff fled to the hotel lobby, crying, only to realize that she did not have a phone that was able to make international calls, any money of her own, or anyone to turn to for help.

21. For the remainder of their marriage, at least monthly, Defendant continued to verbally and emotionally abuse Plaintiff, subjecting her to rageful outbursts, criticism, and gaslighting. During his outbursts, Defendant would scream at Plaintiff in front of their children and/or strangers as well as at their children. He regularly called Plaintiff "crazy" and claimed she was exaggerating when she tried to point out his abusive behaviors. For example, Defendant would tell Plaintiff that she had a terrible memory and was misremembering abusive incidents. He would also try to convince her that she had raised her voice first, had started arguments, was controlling, and had instigated Defendant's outbursts.

22. Throughout the marriage, Defendant would also use his tall stature to physically intimidate Plaintiff, cornering her and closely towering over her with his body. This would occur any time Plaintiff disagreed with Defendant, expressed an opinion he did not like, or intervened when Defendant was yelling at their children.

23. These incidents were typically followed by periods during which Defendant gave Plaintiff the silent treatment or overly sweet attentiveness. For example, in July 2017, when Plaintiff was in the final month of pregnancy with the parties' son, Defendant ignored Plaintiff for nearly a month. And the cycle of various forms of abuse would continue.

24. These cycles are common markers of domestic violence in intimate relationships. The National Coalition of Domestic Violence explains, "There are periods of time where things may be calmer, but those times are followed by a buildup of tension and abuse, which usually results in the abuser peaking with intensified abuse. The cycle then often starts to repeat, commonly becoming more and more intense as time goes on." Nat'l Coalition of Domestic Violence, *Dynamics of Abuse*, https://ncadv.org/dynamics-of-abuse (last visited Apr. 22, 2024). This pattern of abuse is what keeps victims trapped in unhealthy and abusive relationships.

25. The family returned to the United States in November 2019 and moved to El Paso County, Colorado.

26. In Colorado, Defendant's verbal and emotional abuse continued, often brought on by seemingly insignificant and benign events. For instance, in April 2020, Defendant became enraged when Plaintiff gave him advice on how to make old fashioned oats for their children. He called her a "bitch" and screamed at her to "get the fuck out," among other profanities. Plaintiff and the children stayed with her parents for a few nights.

27. Additionally, on October 8, 2022, in front of their children, Defendant lost his temper when Plaintiff brought up a home renovation project and yelled at her, in sum and substance, "I'll do what I want to do! Don't fucking tell me what to do!" When Plaintiff tried to walk away, Defendant followed her and continued yelling. Defendant's abuse brought Plaintiff to tears, and she eventually hid in their dark basement alone for approximately an hour, hoping Defendant would calm down.

28. Defendant continued to physically abuse Plaintiff as well. On April 3, 2021, Plaintiff went out with a friend at Defendant's suggestion. She got home a after midnight on April

6

4, 2021, and Defendant became enraged. He grabbed Plaintiff's arms, restrained her, and shook her, causing her to suffer bruising and redness on her arms.

29. Defendant increasingly began to monitor Plaintiff in Colorado, regularly asking about her whereabouts and eavesdropping on her telephone conversations, leaving her with very little privacy.

30. During their marriage, Defendant also coerced Plaintiff to engage in sexual acts, including fellatio and sexual intercourse, which were usually painful for Plaintiff because she suffers from severe TMJ and Vulvodynia. This occurred on approximately twenty separate occasions once the parties were residing in Colorado. If Plaintiff refused to comply or voiced that she was in pain, as punishment, Defendant would either give her the silent treatment and disregard her existence for a period of time afterward, or he would be cruel to her. As yet another form of coercion, Defendant informed Plaintiff in approximately 2022 that he was keeping track of how often they had sexual intercourse on an Excel spreadsheet.

31. Defendant often videotaped and photographed Plaintiff without her permission during their sexual encounters, and he sometimes coached Plaintiff to act as though she was enthusiastic in the videos. For instance, Defendant forced Plaintiff to perform fellatio on him to get the family dog in approximately July 2020 and videotaped the incident. This type of degradation left Plaintiff completely humiliated. Plaintiff expected those images to remain private and never gave Defendant permission to share the images.

32. Defendant pressured Plaintiff to send him intimate images of herself as well, and Plaintiff sometimes complied with his demands. But, again, Plaintiff always expected those images to remain private and never gave Defendant permission to share the images.

33.     On the night of April 7, 2023, in the presence of their three children, Defendant verbally abused Plaintiff and cornered her in the master bathroom, refusing to let her leave. Defendant was angry because Plaintiff wanted their children to attend a classmate's birthday party instead of going to Defendant's colleague's barbeque. Plaintiff said, "I can't do this anymore." Defendant screamed, "MOMMY DOESN'T LOVE DADY ANYMORE! MOMMY WANTS TO END OUR FAMILY! DADDY LOVES MOMMY BUT MOMMY DOESN'T LOVE DADDY! SHE WANTS TO SEPARATE ME FROM YOU AND BREAK UP OUR FAMILY!" Plaintiff told Defendant that he was behaving inappropriately, and Defendant stood in the doorway, trapping Plaintiff in the bathroom. After approximately ten minutes, Defendant let Plaintiff out of the bathroom and resumed screaming at her. Plaintiff was so terrified of Defendant that she texted her parents to come to the house. When they arrived, Defendant screamed at Plaintiff's mother and attempted to physically prevent her from entering their home and from seeing Plaintiff and speaking with Plaintiff privately. The following morning, Plaintiff locked the bathroom door to take a shower. But Defendant used a tool to unlock the bathroom door, pulled back the shower curtain, and began to berate and interrogate Plaintiff.

34.     This incident culminated in Plaintiff filing a complaint for a civil protection order in El Paso County Court on April 13, 2023.[2] As a result, Defendant was forced to leave their home, and Plaintiff finally separated from Defendant. Prior to this date, Plaintiff was psychologically or emotionally unable to acknowledge the domestic violence and resulting harms, leaving her trapped in the unhealthy relationship.

---

[2] The parties entered into a stipulation on May 23, 2023, in which Plaintiff agreed to dismiss the protection order and Defendant agreed to have no "contact, harass, stalk, injure, intimidate, threaten, touch, sexually assault, abuse, or molest" Plaintiff and to "not engage in conduct that impairs [Plaintiff's] employment, educational relationships, or environment," among other things.

35. But Defendant's abusive behaviors did not end when they separated. On March 3, 2024, Plaintiff discovered that Defendant posted an intimate image of her on the website Passion.com, which attracted over 500 views. The image depicted Defendant's penis going into her vagina, which was uncovered. Plaintiff knew the image was of her because she recognized her stretch marks on both of her inner thighs as well as two freckles on her inner left thigh, and a freckle on her clitoris. Plaintiff did not consent to Defendant's disclosure of her private, intimate image, and he knew that. Worse, evidence suggests that Defendant had been on Passion.com since at least December 2021 and a similar website, Kasidie.com, since November 2023, so Plaintiff fears that the image was shared online before she first discovered it.

36. Moreover, Defendant's Passion.com profile, which anyone accessing the website could see, contained information that could lead a third party to discover Defendant's identity, and, therefore, Plaintiff's identity. For example, Defendant's Passion.com profile included a photograph of Defendant taking a selfie with his cell phone held up over his face and depicting Defendant's unclothed torso and arms as well as his waist (hereinafter "Defendant's Profile Picture"). Defendant's ears, the sides of his face, and his brown hair were visible in the photograph, which was taken in Plaintiff's and Defendant's marital home. Another public photograph showed Defendant from his chin down, standing on a mountain and wearing charcoal gray hiking pants with a zip at the knee that can turn them into shorts, a gray long-sleeve shirt, and brown hiking boots.

37. Defendant's Passion.com profile stated that he resides in Colorado Springs, and is 6'1", 45 years old, straight, Caucasian, athletic, English-speaking, divorced, has children, and has a master's degree. All of this information, except for his age (which was off by two years), is

9

accurate. Defendant's profile also stated he is interested in a group entitled, "FUCK MY WIFE . . . ." His username was "dcjones2020," which seems to reference Defendant's time living in the District of Columbia. According to Merriam-Webster dictionary, "jones" is slang for "to have a strong desire or craving for something."[3] Further, Urban Dictionary describes "jones" as "a state in which one experiences strong desire or attraction, often of a sexual nature."[4]

38.     Defendant's Passion.com profile had additional blurred images posted on the website with the words, "NAUGHTY PHOTO" written over them. Those images were behind a paywall. One image was another selfie of Defendant, who was holding his cell phone over his face, not wearing a shirt, and wearing black boxer brief underwear. The other image was the aforementioned intimate image of the parties having sex and Plaintiff's vagina.

39.     Defendant included on his Passion.com profile that he "can share additional pics after we start communicating."

40.     As of March 3, 2024, Defendant's profile photographs had 2,710 views, and the intimate image of Plaintiff had over 500 views and one like.

41.     Plaintiff's relative saw the aforementioned intimate image, and, assuming it was Plaintiff, sent the image to Plaintiff. Plaintiff immediately recognized her body in the image.

42.     Similarly, Defendant's Kasidie.com profile included Defendant's Profile Picture, which was captured in Plaintiff's and Defendant's marital home office, and stated he resided in Colorado Springs and was 43 years old. All of the information was accurate, and at least one third

---

[3] Merriam-Webster dictionary, jones, *available at* https://www.merriam-webster.com/dictionary/jones#:~:text=noun-,1,slang%20%3A%20habit%2C%20addiction (last visited May 10, 2024).
[4] Urban Dictionary, jones, available at https://www.urbandictionary.com/define.php?term=Jones (last visited May 10, 2024).

party who saw Defendant's Profile Picture recognized Defendant. That account included two "exclusive" photos and four "private" images.

43.     Plaintiff fears that Defendant posted and/or shared additional private, intimate images of her without her consent on these websites, and possibly others, and that her images were shared by viewers or third parties with whom Defendant interacted on the sites.

44.     Research shows abusive intimate partners and former intimate partners are using technologies to degrade, intimidate, and control their victims. Here, Defendant used image-based sexual abuse to perpetrate additional acts of domestic violence against Plaintiff.

45.     As a result of Defendant's actions, as alleged above, Plaintiff has suffered physical, psychological, emotional, and financial harm. Among other things, she experienced a virtual sexual assault and feels as though the most intimate part of herself has been violated and exposed.

## LEGAL CLAIMS[5]

### FIRST CAUSE OF ACTION
(15 U.S.C. § 6851 - Civil Action Relating to Disclosure of Intimate Images)

46.     Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

47.     On March 3, 2024, Plaintiff discovered that Defendant had used an internet connection, along with a cell phone, tablet, and/or computer, to disclose at least one intimate visual depiction of Plaintiff engaging in sexual intercourse with Defendant, including a visual depiction

---

[5] Pursuant to C.R.S. § 13-80-103.6(1), "any action to recover damages caused by domestic violence . . . must be commenced within six years after a disability has been removed for a person under disability . . . or within six years after a cause of action accrues, whichever occurs later . . . ." A "'person under disability' means any person who . . . is psychologically or emotionally unable to acknowledge the act of domestic violence and the resulting harm that is the basis of the civil action." *Id.* at 13-80-103.6(2)(a).

11

of Defendant's penis in her vagina, which was uncovered, to at least one third party by means or facility of interstate commerce. Indeed, Defendant posted the image on the internet website, Passion.com and it attracted over 500 views.

48. Plaintiff was a depicted individual, because her body appeared in part in the image, and the image was identifiable by virtue of distinguishing characteristics, such as her freckles and stretch marks. Moreover, identifying information was displayed in connection with the visual depiction on Defendant's Passion.com profile.

49. Defendant did not obtain Plaintiff's consent to disclose the image.

50. Defendant knew that, or recklessly disregarded whether, Plaintiff had not consented to the disclosure.

51. As a result of Defendant's actions, Plaintiff suffered personal injury, including emotional and psychological injuries, as well as other economic and non-economic damages.

52. Plaintiff demands the greater of the actual damages she sustained or liquidated damages in the amount of $150,000 per image disclosed, and the cost of this action, including reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

**SECOND CAUSE OF ACTION**
(Violation of Colorado's Uniform Civil Remedies for Unauthorized Disclosure of Intimate Images Act, C.R.S. § 13-21-1401 et seq.)

53. Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

54. On March 3, 2024, Plaintiff discovered that Defendant had intentionally disclosed at least one intimate image of Plaintiff engaging in sexual intercourse with Defendant, including a

visual depiction of Defendant's penis in her vagina, to at least one third party. Indeed, Defendant posted the image on the internet website, Passion.com and it attracted over 500 views.

55. Plaintiff was a depicted individual and identifiable because her body appeared in part in the image, and the image was identifiable by virtue of distinguishing characteristics, such as her freckles and stretch marks. Moreover, identifying information was displayed in connection with the visual depiction on Defendant's Passion.com profile.

56. The intimate image was private.

57. Defendant did not obtain Plaintiff's consent to disclose or transmit the image.

58. Defendant knew that, or recklessly disregarded whether, Plaintiff had not consented to the disclosure, the intimate image was private, and Plaintiff—the depicted individual—was identifiable.

59. As a result of Defendant's actions, Plaintiff suffered harm and personal injury, including emotional and psychological injuries, as well as other economic and non-economic damages.

60. Plaintiff demands the greater of the actual damages she sustained or statutory damages in the amount of $10,000 per image disclosed of which Plaintiff knew or reasonably should have known when filing this action or which became known during the pendency of the action, and the cost of this action, including reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to C.R.S. § 13-21-1406(1)(a).

**THIRD CAUSE OF ACTION**
(Extreme and Outrageous Conduct)

61. Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

62. Defendant engaged in extreme and outrageous conduct, including, but not limited to, subjecting Plaintiff to domestic violence throughout their marriage. From November 2019, when the parties moved to Colorado, to April 2023, Defendant physically abused Plaintiff, injuring her arm; emotionally and verbally abused her, regularly berating her, making her question her reality, intimidating her, ignoring her, and demeaning her; invaded her privacy by monitoring her; coerced her to engage in sexual acts, even if those acts caused Plaintiff to experience pain; and videotaped and photographed Plaintiff without her permission while she was engaged in sexual acts.

63. Additionally, on March 3, 2024, Plaintiff discovered Defendant also disclosed one private, intimate image of Plaintiff without her consent on the website Passion.com, which attracted over 500 views from third parties.

64. Defendant engaged in these acts recklessly or with the intent of causing Plaintiff severe emotional distress.

65. Defendant's conduct caused Plaintiff severe emotional distress. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries, damages, and losses, including but not limited to, past and future economic damages, past and future non-economic damages, and past and future physical impairment damages. Plaintiff claims all costs of suit and litigation, pre-filing interest, pre-judgment interest, and post-judgment interest.

## FOURTH CAUSE OF ACTION
(Assault)

66. Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

67. On or about April 4, 2021, Defendant knowingly and intentionally caused an offensive or harmful physical contact with Plaintiff when he grabbed Plaintiff's arms, restrained her, and shook her at their home in El Paso County, Colorado.

68. Defendant's actions placed Plaintiff in apprehension of immediate physical harm.

69. Defendant's assault of Plaintiff was harmful or offensive.

70. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries, damages, and losses, including but not limited to, past and future economic damages, past and future non-economic damages, and past and future physical impairment damages. Plaintiff claims all costs of suit and litigation, pre-filing interest, pre-judgment interest, and post-judgment interest.

**FIFTH CAUSE OF ACTION**
(Battery)

71. Plaintiff incorporates by reference all of the previous allegations in this Complaint as if fully set forth herein.

72. On the night of April 4, 2021, Defendant assaulted Plaintiff by grabbing her arms, restraining her, and shaking her in their home in El Paso County, Colorado. Defendant's actions resulted in physical contact with Plaintiff.

73. Defendant intended to make the aforementioned harmful or offensive contact with Plaintiff.

74. Defendant's aforementioned contact with Plaintiff was harmful or offensive.

75. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries, damages, and losses, including but not limited to, past and future economic damages, past and future non-economic damages, and past and future physical impairment damages. Plaintiff

claims all costs of suit and litigation, pre-filing interest, pre-judgment interest, and post-judgment interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant her the following relief:

A. The greater of her actual damages, or, in the alternative, liquidated damages in the amount of $150,000.00 per image, pursuant to 15 U.S.C. § 6851(b)(3)(i);

B. The greater of her actual damages, or, in the alternative, statutory damages in the amount of $10,000 per image disclosed of which Plaintiff knew or reasonably should have known when filing this action or which became known during the pendency of the action, pursuant to C.R.S. § 13-21-1406(1)(a).

C. Compensatory damages, including past and future economic damages and non-economic damages;

D. Punitive damages, as allowed by law;

E. Attorneys' fees, as allowed by law;

F. All costs associated with this action, including, but not limited to, expert fees, deposition expenses, travel expenses, filing fees, and trial presentation expenses on all claims allowed by law;

G. Pre-filing, pre-judgment, and post-judgement interest at the highest lawful rate; and

H. Appropriate injunctive relief against Defendant pursuant to 15 U.S.C. § 6851(b)(3)(ii) and C.R.S. § 13-21-1406(2)(b), including a permanent injunction

ordering Defendant to cease displaying and disclosing the visual depiction of Plaintiff and any other visual depictions of Plaintiff in his possession; and

I. Any other appropriate relief at law and equity that this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all triable issues.

DATED: June 20, 2024

**ALM Law, LLC**

s/ Allison Mahoney
*Allison Mahoney (CO Bar No. 57677)*
Mailing Address:
PO Box 5520
Snowmass Village, CO 81615
Street Address:
220 W. Main Street, Ste. 101
Aspen, CO 81611
Telephone: (970) 315-5152
E-mail: allison@almlawllc.com
Attorney for Plaintiff