**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-CV-1720-MDB

JANE DOE,

      Plaintiff,

v.

JOSEPH G. TYSK,

      Defendant.

---

**STIPULATED ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

---

**1.    PURPOSE**

This Protocol Regarding Discovery of Electronically Stored Information ("Protocol") will govern the discovery and use of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

**2.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**3.    EXCHANGE OF ESI-RELATED INFORMATON**

Within two weeks after the ESI Protocol is ordered by the Court, the parties agree to exchange in writing the information listed in items (a) through (e) below. The parties agree and understand that their respective responses are based on their knowledge and understanding as of

1

the date of the response, and each party agrees to amend or supplement its responses in a timely

manner if it learns that in some material respect its response is incomplete or incorrect:

      a.      A list of custodians  likely to have discoverable information, including their

title/name and a brief description of their relation to the parties, and a general description

of the devices and/or storage systems on which the custodian's ESI is located;

      b.      A general description of any other systems for electronic communications

and ESI storage ("non-custodial sources") that may contain discoverable information;

      c.      A general description or, at the party's option, a copy of the party's

operative document retention policies, throughout the relevant time period, pertaining to

any electronic communications and or/ESI storage system(s) that may contain discoverable

information;

      d.      A description of any potentially discoverable ESI that the party is aware of

having been lost or destroyed;

      e.      A description of any potentially discoverable ESI that the party contends is

inaccessible or only of limited accessibility and, hence, not producible by that party without

undue burden and/or expense, including:

            1.      the reasons for the party's contention regarding accessibility; and

            2.      the proposed capture and retrieval process available (if any) for

identification and/or recovery of the information deemed inaccessible (including

cost estimates if readily available).

**4.**      **MEET-AND-CONFER**

The parties have begun, and will continue, to meet-and-confer to discuss and attempt to

reach an agreement on the appropriate scope and limitations of both preservation and production

of ESI. The parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, the possible use of testing and sampling, relevant date ranges, possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

**5.     ESI SEARCH**

The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive documents of which it is aware.

a.     <u>Search Terms</u>:

1.     Within four weeks after the ESI Protocol is ordered by the Court, the requesting party will provide a list of proposed search terms to the producing party and the parties will meet and confer regarding any additional terms proposed by the requesting party. Within **14 days** after an initial list of search terms is agreed upon, the producing party will provide a search term hit list or hit report after global de-duplication. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families). The parties will use the report to modify terms, if necessary.

2.      If a party disputes a specific term as being overly broad, the producing party may agree, at their discretion, to review a statistically valid sample (using a benchmark of 98% confidence level with an error rate of 2%) of documents from that term to determine if the term is accurately returning documents. The producing party agrees to share the results of that review and any responsive documents so that the parties can make an informed decision regarding modifications to the specific term in dispute.

3.      If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties will submit the dispute to the Court in the form of a joint discovery letter with a discussion of the relevance and/or burden associated with the search terms in dispute.

4.      The producing party agrees to quality check the data that does not hit on any terms (the Null Set) by selecting a statistically random sample of documents from the Null Set.  The size of the statistically random sample shall be calculated using a confidence level of 95% and a margin of error of 2%. If responsive documents are found during the Null Set review, the producing party agrees to produce the responsive documents separate and apart from the regular production.  The parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

6.      **SHORT MESSAGES**

a.      Text messages, and other short messages used by various chat message programs should be treated differently for purposes of search and retrieval due to the nature

4

of limited text and the shorthanded language that is commonly employed when the types of communication are used.  Short messages should not be searched using search terms or as part of the other Unstructured Data TAR process outlined above.

b.       Short messages should be produced by conversation in 24-hour increments, meaning a responsive message should be produced with the messages that come 12 hours before and 12 hours after the message was received or sent.  If several messages in the same chain are responsive, then the window should be enlarged to include messages 12 hours before the first responsive message and 12 hours after the last responsive message to give context to the conversation.

c.       Attachments, whether inline or attached via hyperlink, should be produced as close to how they have appeared in the original conversation.

d.       The parties recognize that technical limitations exist with regard to the retrieval, search, review and production of short messages and should readily meet and confer to come to an agreement before such messages are produced.

7.    **HYPERLINKED ATTACHEMENTS**

a.       The parties agree that hyperlinked attachments will be treated and produced in the same way that embedded attachments are produced.  For example, hyperlinked attachments should be connected to their parent document via their Beginning Attachment field and produced in sequence to their parent, meaning that the attachment will follow the parent document or email in bates numbering.

b.       To the extent possible, the version of the produced hyperlinked attachment will be the version closest to the email sent date of the parent email, or the date last modified of the parent document.

8.     **ESI PRODUCTION**

a.      The parties agree that attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost-effective conduct of discovery. Appendix A sets forth technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce documents in PDF, TIFF, native and/or paper or a combination thereof as set forth in Appendix A.

b.      For good cause, a requesting party may request the production of documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer, and the producing party shall not unreasonably deny such requests. The parties agree not to degrade the searchability of documents as part of the document production process. The parties also recognize that in some instances where documents have been produced in a form other than native, subsequent production of the same documents in native form may be warranted for certain purposes.

c.      A producing party may deduplicate a production vertically (*i.e.*, within individual custodians) or horizontally (*i.e.,* across different custodians) provided that horizontal deduplication will necessitate the inclusion of information for custodians for which the documents have been deduplicated as specified in the technical production specification attached).

6

d.      The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The parties will meet and confer in good faith to reach agreement regarding these issues and the appropriate form of production and will seek Court intervention if necessary.

**9.      AUTHENTICITY**

A document produced in this litigation shall be presumed to be authentic if offered as evidence against the party that produced it unless the party (a) gave notice at the time of production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

**10.      CONFIDENTIALITY, PRIVACY, AND SECURITY OF INFORMATION**

a.      The Stipulated Protective Order, ECF No. 29, will govern the treatment of information warranting confidential treatment.

b.      The prosecution and defense of these actions will require the processing and review of ESI and may include data containing Personally Identifiable Information ("PII") and protected health information. In the interest of addressing privacy and security concerns, and in order to facilitate the processing and production of documents containing such data, the parties will discuss appropriate precautions and arrangements for reviewing such data.

**11.      PRESUMPTION OF PRIVILEGE**

All emails and text messages where one or more recipient on the email and text message with the following email domains are presumptively privileged and need not be logged on to a privilege log:

@almlawllc.com

@robinsonandhenry.com

To the extent that counsel with different domain names enter appearances in this case for either

side in the future, such domain names will be afforded a similar presumption.

**12.    No Waiver of Other Objections**

Entry into this Protocol does not waive the right of any party to object to the production of

documents on any other grounds.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**


**Dated:** October 1, 2024                        **By:** */s/ Allison Mahoney*
                                                   Allison Mahoney
                                                   ALM Law, LLC
                                                   PO Box 5520
                                                   Snowmass Village, CO 81615
                                                   Telephone: (970) 315-5152
                                                   E-mail: allison@almlawllc.com
                                                   *Counsel for Plaintiff*


                                                   **By:** */s/ Andrew Lintner*
                                                   Andrew B. Lintner
                                                   Robinson & Henry, PC
                                                   8000 S. Chester St., #125
                                                   Centennial, CO 80112
                                                   Telephone: (303)688-0644
                                                   andrew.lintner@robinsonandhenry.com
                                                   *Counsel for Defendant*


**PURSUANT TO STIPULATION AND FOR GOOD CAUSE SHOWN, IT IS SO ORDERED**.

**Dated:** October 3, 2024

                                                   _____
                                                   Maritza Dominguez Braswell
                                                   U.S. Magistrate Judge

8

## Appendix A

## Technical Specifications for Production

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as multipage pdf documents imaged at 300dpi.

- Each document should be produced as its own stand-alone pdf file and multiple documents should not be merged into a single pdf file.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs, External USB hard drives of via Secure File Transfer. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator, ASCII character 020: "¶"
    Quote Character, ASCII character 254 "þ"
    Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

- Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

- Embedded or Hyperlinked attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

- All documents should be produced in their native format, unless that format is only usable on a proprietary system accessible by the producing party.  In that case, the parties should meet and confer as to a proper format for production.

- Each production should also come with a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

> Beginning Production Number
> Ending Production Number
> Beginning Attachment Range
> Ending Attachment Range
> Custodian
> Other Custodian (custodians who had duplicate copies of the document but were deduplicated using horizontal deduplication)
> Confidentiality Designation
> Original Location Path
> Email Folder Path
> Document Type
> Redacted (the reason a document contains a redaction, i.e. Privileged, HIPAA, PII)
> File Name
> File Size
> Hash Value
> Date Last Modified
> Date Created
> Date Last Accessed
> Date Sent
> Date Received
> Author (either email or lose file)
> Recipients
> Copyees
> Blind Copyees
> Email Subject
> Path to Native File
> Conversation Index
> Conversation Participants (for text or social media)

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

PRODUCTION OF TEXT MESSAGES, SOCIAL MEDIA AND OTHER SHORT MESSAGES

The parties agree that they will meet and confer regarding the production of ESI that originates as text messages, social media or other short messages.  The discussion shall include, at a minimum:

- Production format (In petrified form or as a spreadsheet or other database or report from the original software);

- The timeframe of messages, specifically, the conversation intervals for production.  For example, with the conversations be split into the messages sent in a 24-hour period, 1 week period or some other time parameter;

- The production of emoji information so that it is not lost in production; and

- The identification of the participants in the conversations or postings being produced.